UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARSHA CRAWLEY,

        Plaintiff,                              Hon. Ellen S. Carmody

v.

                                          Case No. 1:18-cv-740

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age on her alleged disability onset date and 43 years of age on the date her disability insurance status expired. (PageID.36, 169). Plaintiff successfully completed high school and worked previously as a circuit board inspector. (PageID.40-41). Plaintiff applied for benefits on October 29, 2015, alleging that she had been disabled since April 1, 2014, due to osteopenia, arthritis, lower back problems, and insomnia. (PageID.34, 169-75). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.87-167).

On July 26, 2017, Plaintiff appeared before ALJ Colleen Mamelka with testimony being offered by Plaintiff and a vocational expert. (PageID.47-76). In a written decision dated October 25, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.34-42). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.20-24). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from: (1) grade 1 anterolisthesis of L5-S1; (2) bilateral pars defect; (3) bilateral neural foraminal stenosis; (4) degenerative joint disease; (5) reflex sympathetic dystrophy; and (6) spondylosis, severe impairments that whether considered alone or in combination with other

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.36-37).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she must be able to sit/stand at will, but will not be off task more than ten percent of the work day; (2) she can occasionally balance, kneel, crouch, crawl, and push/pull with her lower extremities; (3) she can never climb ladders, ropes, or scaffolds; and (4) she can never work at unprotected heights or be around moving machinery. (PageID.37).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

5

The vocational expert testified that there existed approximately 80,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.72-74). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

I.   **The ALJ Properly Evaluated the Opinion Evidence**

On June 28, 2017, two and one-half years after the expiration of Plaintiff's insured status, Dr. Joel Bez completed a two-page form regarding Plaintiff's ability to perform work-related activities. (PageID.527-28). As detailed below, Dr. Bez concluded that Plaintiff's ability to perform work activities was more limited than the ALJ concluded. The ALJ, however, afforded only "partial weight" to Dr. Bez's opinions. Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting the opinions in question is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

6

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." Miller v. Sec'y of Health and Human Services, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing Shavers v. Sec'y of Health and Human Services, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. See Cohen, 964 F.2d at 528; Miller v. Sec'y of Health and Human Services, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing Shavers v. Sec'y of Health and Human Services, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); Cutlip v. Sec'y of Health and Human Services, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. Gayheart, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Id. (quoting Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. Gayheart, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. Id. at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the

7

examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. Id. (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. See, e.g., Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007); Undheim v. Barnhart, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

Dr. Bez reported that Plaintiff could lift/carry less than 10 pounds. (PageID.527). The doctor reported that during a normal workday Plaintiff could sit for 4 hours and stand/walk for 2 hours, but also required a sit-stand option. (PageID.527). These limitations are generally consistent with the ALJ's RFC assessment. Dr. Bez, however, further determined that Plaintiff would need to "lie down" or "recline" "25% or more" of an 8-hour workday. (PageID.527). The doctor also reported that Plaintiff could "never" twist, stoop, or crouch and could only rarely climb stairs. (PageID.528).

With respect to Plaintiff's medical treatment prior to the expiration of her insured status, the record is not extensive. The ALJ summarized this evidence as follows:

> In terms of the claimant's spine disorders, prior to the relevant time period for this decision, she had computed tomography (CT) of her lumbar spine on August 20, 2011, that showed Grade I anterolisthesis of L5 on S1, bilateral pars defect, and severe bilateral neural foraminal stenosis at L5-S1 (1F/6). The medical evidence of record shows that the claimant saw a pain specialist doctor at Integrative Pain Center from at least September 2011 until October 2014 for her lower back pain (2F). During the relevant time period for this decision, the claimant had multiple intravenous lidocaine ketamine infusions to help control her pain and unremarkable physical examinations (2F/2-28). On September 12, 2014, the claimant's doctor noted that she had good pain relief and did not

8

require any injections at that moment (2F/9). At her last appointment on October 10, 2014, the claimant reported that she had 100 percent pain relief for 14 days after her last injection and then 60 percent relief of pain and functional improvement after that (2F/2). On physical examination that day, her palpation of local tenderness of the lower back was much less to non-tender and there was an increase in range of motion without pain compared to the past (2F/2).

On November 19, 2014, the claimant established care with a new pain specialist doctor for her lower back pain (4F/30). On physical examination this day, she had pain with lumbar flexion and extension and her facet and discogenic signs were positive; however, she had normal muscle tone, reflexes, sensation. In addition, her gait was non-antalgic unassisted (4F/26). This same day, the claimant had a facet injection to her L3-L4, L4-L5, and L5-S1 (4F/31).

On December 29, 2014, the claimant had an MRI of her lumbar spine that showed Grade I spondylolisthesis (anterolisthesis is a type of spondylolisthesis) secondary to bilateral L5 spondylolysis and disc disease, and foraminal stenosis bilaterally with L5 nerve root compression to a mild degree (3F/21). Just prior to this MRI, on December 19, 2014, the claimant visited her pain doctor and reported her pain at a six on a scale of zero to ten (4F/26). This same day, the claimant underwent another facet injection to her lumbar spine (4F/28).

(PageID.39).

As the ALJ noted, Dr. Bez first examined Plaintiff in November 2014, less than six weeks prior to the expiration of her insured status. (PageID.39-40, 528). The results of this examination, however, were not consistent with the opinion Dr. Bez subsequently offered. Specifically, Dr. Bez reported:

> Lumbar: Pain is worse with flexion and extension. Facet signs are positive bilaterally at L3/L4, L4/L5, and L5/S1. Discogenic signs positive at L5/S1.
>
> Neurological: Speech is fluent. Muscle tone is normal. Gait is non-antalgic unassisted. Deep tendon reflexes in the left upper extremity are normal. Upper extremity dural signs are negative bilaterally.

9

> Sensation in the bilateral upper extremity is normal. Deep tendon reflexes in the left lower extremity are normal. Deep tendon reflexes in the right upper extremity are normal. Vibratory sensation in the bilateral upper extremity is intact. Sensation in the bilateral lower extremity is normal. Deep tendon reflexes in the right lower extremity are normal. Vibratory sensation in the bilateral lower extremity is intact.

(PageID.487).

An examination conducted one month later revealed identical findings. (PageID.482). As the ALJ also noted, Plaintiff's testimony at the administrative hearing contradicted Dr. Bez's opinions. For example, while Dr. Bez opined that Plaintiff could stand/walk for only two hours daily, Plaintiff testified that during an 8-hour workday, she could be "on [her] feet" for four hours. (PageID.67).

There is no question that Plaintiff suffers from several severe impairments which impose significant functional limitations which is reflected in the ALJ's RFC finding. Moreover, the ALJ's conclusion that Dr. Bez's opinions, offered two and one-half years after the expiration of Plaintiff's insured status, "are more reflective of [Plaintiff's] current limitations as opposed to limitations that existed during his first examinations" is supported by substantial evidence. Simply put, the medical evidence as of the expiration of Plaintiff's insured status, including Dr. Bez's treatment notes, is consistent with the ALJ's RFC assessment and does not support Dr. Bez's extreme limitations offered more than two years later. Accordingly, this argument is rejected.

**II.      The ALJ's Assessment of Plaintiff's Subjective Allegations is Not Supported by Substantial Evidence**

As the ALJ recognized, Plaintiff testified at the administrative hearing that she is limited to a greater extent than the ALJ recognized in her RFC assessment. (PageID.38). The ALJ nevertheless discounted Plaintiff's testimony on the ground that is was "not entirely consistent

with the medical evidence and other evidence in the record for the reasons explained in this decision." (PageID.38). Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting her testimony and subjective allegations is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[2]

---

[2] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting

12

a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

In support of her decision to discount Plaintiff's credibility, the ALJ stated in conclusory fashion that Plaintiff's statements were not credible "for the reasons explained in this decision." A review of the ALJ's decision, however, fails to indicate "the reasons" upon which her credibility assessment is based. While the ALJ noted Plaintiff's subjective allegations, the discussion of such does not provide any insight into why such were afforded little weight. Moreover, Plaintiff's subjective allegations are not so unreasonable or patently inconsistent with the evidence as to be incredible on their face. The ALJ's very brief discussion of the evidence likewise provides no insight into her decision to discredit Plaintiff's credibility. While evidence may, in fact, exist which supports the ALJ's credibility assessment, it is not the Court's role to search the record for such evidence and articulate a rationale supporting the ALJ's decision. Instead, the Court is limited to reviewing the ALJ's rationale and determining if such is supported by substantial evidence. In this case, however, the Court cannot perform this task because the Court simply cannot discern the ALJ's rationale for discounting Plaintiff's credibility. Accordingly, the Court finds that the ALJ's decision is not supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and**

**the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.  A judgment consistent with this opinion will enter.


Dated: June 13, 2019                                        /s/ Ellen S. Carmody
                                                                           ELLEN S. CARMODY
                                                                           United States Magistrate Judge